The material facts in so far as they are necessary to a determination of the questions made and arguments advanced as alleged in the petition are in brief as follows:
For a first cause of action, M. W. Hunt, the relator, alleges he is the duly elected, qualified and acting prosecuting attorney of Sandusky county, Ohio, and as such brings this action for the use and benefit and on behalf of said county. That said county of Sandusky is a duly organized county of the state of' Ohio, and that said The Bellefontaine Bridge & Iron Company is a corporation duly organized under the laws of the state of Ohio.
On the 18th day of July, 1903, said defendant, S. M. Fronizer, as agent of said company, entered into, with a majority of the *374 board of commissioners of said county, a contract for furnishing the materials and performing the work therein specified for the construction of a certain bridge located near A. J. Wolfe’s residence in Sandusky township in said county, by the terms of which said Fronizer and said iron company agreed to furnish said materials and perform said labor for the completion of said bridge for the price of $240, payable on January 1, 1904. That said contract was illegal and unlawful, as said Fronizer and said iron company and said commissioners then and there well knew, for the following reasons:
1. That said board of commissioners nor any member before or at the time of entering into said contract or at any other time, procured a certificate of the county auditor that the money required for the payment of the obligation created by said contract or any part thereof was in the treasury to the credit of the bridge fund of the county, or had been levied and placed on the duplicate and in process of collection and not appropriated for any other purpose, as required by Section 2834Z), Revised Statutes of Ohio, and that no such fund was in the treasury.
2. That the price agreed upon by said county commissioners and said Fronizer as such agent for said iron company was exorbitant, largely, grossly and fraudulently in excess of the true and reasonable value thereof, to-wit, double the real value and more, as said defendants, Fronizer and the iron company, well knew.
3. Said contract was entered into secretly between B. B. Overmyer and Winfield S. Blair and said Fronizer, and said contract was not made and entered into in open public board meeting or session of said county commissioners, nor any minute or record made by the board or its clerk.
That on December 26, 1903, before the said sum of $240 was due and payable according to the terms of the contract, defendants Fronizer and N. Y. Elliott, claiming to be the agents for said iron company, well knowing said contract to be fraudulent and illegal, wrongfully procured the allowance by said Bair and Sandwiseh, two of the commissioners of the county, and knowing the same to be fraudulent and illegal, they procured from *375 the county treasurer the payment of $240 upon said illegal contract, which relator demands to be paid back into the treasury.
The second cause of action alleged a similar transaction on •July 18, 1903, for $452 on account of another Wolfe bridge, due, payable and paid as set forth in the first cause of action.
The third cause of action alleges a similar transaction on July 18, 1903, for $68 for materials and work for the repair,of a •certain bridge located near one William ITornung’s residence in Washington township, Sandusky county, Ohio, due, payable and paid as set forth in the first cause of action.
The fourth cause of action alleges a similiar transaction on the same day for $175 for material and labor for the repair of ■a bridge near John Klinker’s residence, in Washington township, said county, due, payable and paid as set forth in the first cause -of action.
The fifth cause of action alleges a similar transaction on March 28, 1903, for the sum of $996 for materials and labor for the completion of .repairs on a bridge near T. A. Hineline’s residence, in Rice township, Sandusky county, Ohio, payable ■after December 1, 1903, thereafter, and paid on December 3, 1903, as alleged in the first cause of action, except it is not claimed that the same was paid before it was due.
The relator claims judgment against the defendants in the sum of $1,931, with interest on the separate sums from the days they were paid.
Separate demurrers were filed on behalf of each of the defendants, each demurring to the petition for the following reasons :
1. Several causes of action are improperly joined therein.
2. Separate cause of action against several defendants are improperly joined therein.
3. Said petition does not state facts sufficient to constitute a •cause of action against the defendant.
4. The plaintiff and relator has no legal capacity to sue.
Briefs were filed and the demurrers argued.
The third and fourth grounds of the demurrer were most particularly argued and insisted upon.
*376 In the petition filed the name of one of the defendants was omitted from one of the causes of action, but it appearing to be a clerical error, the name was inserted by consent, thus eliminating that phase of the contention, practically reducing the question as to whether or not there are sufficient facts stated to constitute a cause of action, the fourth ground probably being included in the third.
On behalf of the iron company it is contended—
First. That the five several contracts are alleged to have been void for three reasons:
1. Lack of the certificate required by Section 28346, Revised Statutes of Ohio.
2. Exorbitant price fraudulently in excess of the true value as defendants well knew.
3. ' Secret contract with two commissioners, the third being ignorant of the facts, and ño record being kept.
And that there is no charge of fraud even if the contracts be illegal, as such it was because the manner of their making was irregular and not in accordance with the statutes.
As supplementary to this, it is well to add that the petition charges that the contracts were not made in open meeting by the board; that is, there was no action of the county commissioners as a board.
Second. It does not appear that the bridges and repair work were not furnished to the county by the bridge company, but ■inferentially that value to some extent, about half the contract price, has been furnished under these contracts, and that before the moneys paid out on such completed contracts can be recovered back, either the property received or the actual value thereof must be tendered back to the bridge company.
Third. There is no allegation that the bridge company received the money.
Fourth. The statute, Section 1277, Revised Statutes of Ohio, does'not authorize the prosecuting attorney to bring the action.
Fifth. That even if said Section 1277 did authorize such • suit, there is no allegation that the money paid out was public moneys.
*377 Sixth. That the county commissioners, having passed upon these claims, it is “res judicata,” and can not be reviewed by any other tribunal.
The contentions on behalf of the other defendants, Fronizer and Elliott, are included within the divisions above so far as applicable.
On behalf of the plaintiffs it is contended:
1st. That Section 1277, Revised Statutes of Ohio, gives direct and ample power to bring this action and to recover back the money illegally withdrawn from the treasury.
2d. That this being a statutory remedy with absolute right, an offer to return is not a condition precedent to the right of recovery.
3d. It is not a question of fraud except only in so far as illegality is a fraud.
4th. The failure of the commissioners to act as a board and in the manner provided by the statute. And also the failure to procure the certificate as required before action are conditions precedent, rendering the contracts and payment of moneys thereunder not only illegal, but absolutely void.
As to the right of action, it is provided by Section 1277, Revised Statutes of Ohio:
‘ ‘ That the prosecuting attorneys of the several counties of the state, upon being satisfied that the funds of the county or any public moneys in the hands of the county treasurer or belonging to the county are about to be or have been misapplied, or that any such public moneys have been illegally drawn out of or withheld from the county treasury, or that a contract in contravention of the laws of this state has been or is about to be entered into, or has been or is being executed, or that a contract was procured by fraud or corruption * * * or that any money is due the county, may apply by civil action in the name of the state to a court of competent jurisdiction to restrain such contemplated misapplication of funds, * * * or to recover hack for the use of the county all such public moneys so misapplied or so illegally drawn out, or to recover, for the benefit of the county, any damages resulting from the execution of any such illegal contract.” * * #
This amendment was passed May 12, 1902 (95 O. L., 558).
*378 The previous act was passed April 25, 1898 (93 O. L., 408), and contains substantially the same language, but the act prior to 1898, and which was in force up to that time, did not contain the provisions as to recovery back of moneys illegally drawn out as noted within the parenthesis above.
There are other provisions with regard to the recovery of real and personal property belonging to the county illegally used or occupied, or being used or occupied in violation of any contract and to recover the real or personal property or damages, “or to otherwise enforce the same or to recover any such money due the county. ’'
It will be observed that the statute authorized the prosecuting attorney to recover for the use of the county any public moneys in the hands of the county treasurer, or belonging to the county, which have been illegally drawn out of the county treasury, or on any contract procured by fraud, or he may restrain the entering into or execution of an illegal contract or the illegal use and occupation of county property, or may recover damages resulting from the execution of illegal contracts or non-performance of a contract. Any one or all of these things the prosecuting attorney is empowered to do.
Whatever may be said as to the rights of parties before this amendment was passed, will not apj)Iy to the express language of the statute where new rights have been given.
Under this statute as amended the county, through its prosecuting attorney, may recover back moneys illegally drawn out of the county treasury. Is there any legal or equitable principle which renders this provision of no avail? No claim has been made that it was not within the province of the Legislature to pass it, and if not prohibited, the justice or injustice of it may well be left to that body.
In the case of Buchanan Bridge Company v. Campbell et al, Commisssioners of Fulton County, 60 O. S., 406, the bridge company sought to recover the value of a bridge furnished the county commissioners of that county under an illegal contract, and the right was denied.
The Supreme Court decided:
*379 “A contract made by county commissioners for the purchase and erection of a bridge in violation or disregard of the statutes on that subject, is void, and no recovery can be had against the county for the value of such bridge. Courts will leave the parties to such unlawful transaction where they have placed themselves, and will refuse to grant relief to either party. ’ ’
That was under a contract made on the 1st day of November, 1894, four years before the provision noted in the amended act of 1898.
In that case it was contended as in this, that the commissioners ought to pay either the fair value of the bridge or rental value. That the commissioners ought not to be allowed to keep the bridge, but should be compelled to make restitution. The decision gives the rule in Ohio.
Burket, J., in delivering the opinion, on page 426 answers these claims:
“To say that the commissioners accepted the bridge and retained it, and promised to pay what it is reasonably worth does not aid the plaintiff. The commissioners can not purchase supplies upon the reasonable worth plan, and no one is permitted to deal with them on that plan. The statute is the only authority and guide for both parties. In this case both parties have acted in disregard of the statutes, and the courts will leave them where they have placed themselves, and refuse to aid either. ’ ’
And further, p. 419:
“Whatever the rule may be elsewhere, in this state the public policy, as indicated by our Constitution, statutes and decided cases, is, that to bind the state, a county or city for supplies of any kind, the purchase must be substantially in conformity to the statute on that subject, and that such contracts made -in violation or disregard of such statutes are void, not merely voidable, and courts will not lend their aid to enforce such a contract. Directly or indirectly, if the contract is executory, no action can be maintained to enforce it, and if executed on one side, no recovery can be had against the party on the other side.
“Experience has shown that this policy is necessary to prevent abuses and protect the public treasury from depletion by unscrupulous public officers.”
From the decision in that ease it will be seen that it is not a question of fraud, but simply whether or not the transaction *380 was illegal. The case determines fully the jurisdiction of the prosecuting attorney under Section 1277 in injunction. It holds that when an injunction preventing payment on an illegal contract is had, parties furnishing bridges or other material under and by virtue of the illegal contract, can not recover either the contract price or on “quantum meruit.” It goes further, and very forcibly lays down the proposition that the court will leave parties to such a contract where they have placed themselves. This clearly means that the parties furnishing the bridges or material under such illegal contract can not recover back the property, and that in furnishing such bridges they are mere volunteers. ■
In the case at bar the petition alleges that the contract was not made by the board in open session, nor was any record made of it as required by law. And that the certificate required by Section 2834b was not secured before or at the time the contract was entered into. And as said by Burket, J., in the Buchanan Bridge Co. case, page 425:
“These omissions are fatal to the validity of the contract, and by force of the above cited sections of the statute the contract is totally void, and imposed no obligation on either party to it.
“The statutes are notice to the world as to the extent of the powers of the commissioners, and the bridge company is bound by that notice. It knew and was bound to know that the commissioners had no power to thus enter into a contract, and that a contract thus attempted to be entered into would be null and void, and would not bind either party.”
These principles are reiterated in a later decision, and, as it covers some other grounds, it will be well to note the same here.
The case of The Vindicator Printing Company v. The State of Ohio, 68 O. S., 362, is a decision rendered upon facts occurring after the change made in original Section 1277. The printing company had been paid bills for publishing certain proclamations, the annual report of the county combmissioners and the examiners’ report thereon. The statutes provided that the notice should be published for one week in two weekly papers of opposite politics, whereas the printing company, without authority of law, though directed by the board, published such no *381 tice in its weekly and also in its daily edition, the latter being illegal and excessive. A number of additional and excessive publications of different items were made and paid for.
The prosecuting attorney of the county brought an action to recover back the illegal payments.
In that case there was no charge of fraud, but simply an illegal contract was alleged. The rights of the parties were thoroughly discussed, covering the grounds already noted in this case, and in addition it was claimed on behalf of'the printing company:
1st. That the county commissioners, having passed upon the question of the legality of the bills, the same was res judicata, and not reviewable in that action.
2d. That the construction given by the commissioners as to the requirements of the statutes should be considered, and
3d.' That the prosecuting attorney had no right to sue.
As to the first above, the Supreme Court, as part of the syllabi, held:
“1. * * * The board is also without authority to allow a claim for such excessive publications, and the allowance of such claims does not bind the county. Nor is authority to adjudicate and allow such claims given by the fact that with the charge for unauthorized publications there is on the same paper a charge for a publication which is authorized by statute.”
In the opinion of Spear, J., p. 367:
“The ease of Jones, Aud., v. Commissioners, 57 O. S., 189, which rests upon the provisions of the Constitution, Section 5 of Article X, viz., ‘No money shall be drawn from any county or township treasury except by authority of law,’ establishes, so far as the matter affects claims of county auditors, the proposition that: The board of county commissioners represent the county in respect to its financial affairs only so far as authority is given to it by the statute.” * * *
As to the second proposition above, Spear, J., on p. 369, says:
“It is insisted that the fact appearing in the petition that the construction of the statute contended for by plaintiff in error had been placed on the statute by the officials of the county for *382 the last five years is of great significance. The rule of contemporaneous construction by officers charged with the enforcement of statute is persuasive, but it can not have forcible application to a situation where the construction of a general statute, having uniform operation throughout the state, appears to have been constructed only by the officers of one county.”
It is a principle of law that the plain and unequivocal provisions of a statute can not be controlled by opinion or individual interpretation. It is not a question of intent, but simply one of right to act. If no power is given by statute except in a certain manner, and that is not followed, the act of the board is illegal and void, and the act is the same as if it had never been attempted.
As already pointed out, the language of Section 1277, as it now exists, is clear and unequivocal, and a decision would hardly seem necessary to determine its meaning. However, in the case of the Vindicator Publishing Co., cited above, syllabi 3:
“The act of April 25, 1898 (93 O. L., 408), clothes the prosecuting attorney with power to recover back money so illegally drawn from the treasury on and after its passage.”
Spear, J., p. 372:
“Manifestly it is the purpose of this statute to reimburse the treasury for unauthorized payments from it not otherwise provided for. It is in one sense a remedial statute, yet it gives a right of action which before its enactment did not exist.”
This, then, while it gives a right to the county to recover back, does not change any of the rights of the defendants, nor add anything to their rights. The defendants knew the law, and in dealing with the board of county commissioners they were bound to see to it that all mandatory provisions of the law were complied with, and if they neglected such precautions, they become mere volunteers and must suffer the consequences.
To rule otherwise would be to nullify the law and open the doors to the fraud and imposition which the statute is designed to shut out.
*383 The statute should be construed so as to give force and effect to the manifest purpose of the Legislature. Before the amendment of 1898 the law gave certain remedies in injunction. The amendment was designed to give equal rights in case the illegal transaction had been consummated. To hold otherwise would be to put a premium on successful fraud. As the statute now stands, whatever could have been prevented by injunction can now be remedied by a suit to recover bach, and the rights of the parties who have furnished bridges and other materials under illegal contracts to recover bach their property remain unchanged.
If it is said that it is inequitable to allow the recovery back of the money paid on illegal contracts without the return of the property, the answer is that this is a statutory remedy. The law may, and in this case it clearly has, imposed the loss of property thus furnished upon persons contracting with public bodies contrary to and in violation of the statute. It is not a question of equity, but of law. Moreover, it is a well known legislative policy to provide penalties for the very purpose of preventing illegal or fraudulent or gaming contracts. Nor does the fact that there are criminal statutes with reference to illegal or fraudulent or corrupt transactions with county commissioners affect the reason of the law. It is well known that the additional burden of proof and the secrecy with which such transactions are conducted render such statutes ineffectual. Nor is the authority in the case of Higgins v. Commissioners, 62 O. S., 621, in conflict with the conclusion. That action was brought, by county commissioners under the authority of Section 815, Revised Statutes. None of the limitations mentioned in that case apply to the provisions of Section 1277.
As to the excessive price, it is probably unnecessary for a decision on that point in this ease, although it has been held that—
“Excessive valuations so large as to indicate that the officers of the corporation acting in the matter are not exercising the same fidelity and care as would be expected by an individual purchasing for himself, with his own money, will sustain an action to enjoin the purchase at the suit of a tax-payer” (1 Beach Pub. Corp., p. 721, Section 709).
M. N. Hunt, Prosecuting Attorney, Basil Meek and H. C. Be Rem, for plaintiff.
Samuel H. West, for the bridge company.
James 'Hunt and Lester Wilson, for Fronizer and Elliott.
It is alleged that the agents contracted for the bridge company, and the defendants, Elliott and Fronizer, received the money through this company or by the use of its name. This shows all participating in the fund. So there is a liability (Norton v. Bloom, 19 O. S., 145).
It is alleged that the parties procured the various sums from the county treasury. As the county treasurer is an official holding the public funds of his county and none other, the conclusion is that he paid from such funds only as he is charged with and supposed to have. Whatever rights the defendants have must be determined from such allegations as they may choose to make. The plaintiff is not bound to establish the fact of agency. It is enough to assert that the money was paid out illegally to and for the benefit of the defendants, and these allegations are made with reasonable certainty.
Whether the facts stated constituted an action in tort or on contract, all parties participating may be properly joined as defendants (Connelly v. Brumbach, 18 Cir. Ct., 502).
This covers all the contentions of the parties, and believing that those of the defendants are not well taken, the demurrers are overruled.